<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

| | |
|---|---|
| GERALD L. GOLDFADEN, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 02-712 (JAG) |
| v. : | |
| : | **O P I N I O N** |
| MISS WORLD (JERSEY) LIMITED, : | |
| : | |
| Defendant. : | |
| : | |

<u>GREENAWAY, JR., U.S.D.J.</u>

This matter comes before the Court on the cross-motions for summary judgment of

Plaintiff Gerald L. Goldfaden ("Plaintiff") and Defendant Miss World Jersey Limited

("Defendant"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set

forth below, both motions are denied.

<u>BACKGROUND</u>

I.      <u>The Parties and their Registered Trademarks</u>

Plaintiff is the registered owner of U.S. Federal Service Mark Registration No. 2,179,056

("056") for the mark "Miss World Wide Web," in connection with entertainment services in the

nature of beauty contests.  He is also the registered owner of the domain name, "missworld.com."

Plaintiff asserts that he registered this particular domain name as an abbreviation for his service

mark "Miss World Wide Web."  (Declaration of Gerald Goldfaden dated August 30, 2003

("Goldfaden Decl."), at ¶ 5.)

Defendant is the registered owner of U.S. Federal Service Mark Registration No. 877,221

("221") for the mark "Miss World," in connection with entertainment services, namely,

conducting beauty competitions.  This mark has been registered for over thirty years in the United States, and also has been registered in numerous other countries.  (Affidavit of Julia Morley received December 12, 2003 ("Morley Aff."), at ¶ 7.)  In connection with its Miss World trademark, Defendant held the first Miss World beauty pageant in the United States in 1951. Over the past 52 years, the Miss World pageant has been promoted through broadcasts and publicity events throughout the world.

Defendant is also the registered owner of the domain name "missworld.org," which is currently home to the Miss World website.  Apparently, Defendant obtained the ".org" domain name, even though it is not a non-profit organization, because Plaintiff already had registered missworld.com.

Plaintiff asserts that his goal was to develop the concept of holding beauty contests on the Internet, with both participation and voting being "open to the world."  (Goldfaden Decl. ¶ 2.) Therefore, on March 12, 1996, he registered missworld.com.  On May 17, 1996, he filed an Intent to Use ("ITU") trademark application with the United States Patent and Trademark Office ("PTO") for the service mark, "Miss World Wide Web."

In 1998, Goldfaden announced to the public the concept of his online beauty contest. (Goldfaden Decl. ¶ 23; Morley Aff. ¶ 9.)  He received numerous unsolicited photographic submissions from the public and these submissions were displayed on his website.  (Goldfaden Decl. ¶ 23.)  No formal vote took place and no contestant was awarded a title, but informal e-mail votes were "noted, tallied and results posted."  (Goldfaden Decl. ¶ 23.)

On May 7, 1998, he filed a Statement of Use ("SOU"), in support of his application for a trademark registration for the mark "Miss World Wide Web" with the PTO.  The PTO accepted

2

the SOU, and published the mark in the Official Gazette.[1]  Although Defendant submitted two separate requests for extensions of time to oppose Plaintiff's application, it ultimately never filed any opposition with the PTO in order to challenge the validity of Plaintiff's mark.  (Pl.'s L. Civ. R. 56.1 St. of Undisputed Material Facts ("Pl. SOF"), at ¶ 8.)

In July 1998, Plaintiff was contacted by David Altman, who was Defendant's exclusive licensee in the United States.  (Declaration of David Altman dated September 4, 2003 ("Altman Decl."), at ¶ 2.)  As Defendant's exclusive licensee, Altman sponsored, financed, promoted, organized, and conducted the competition of the U.S. "Miss World" contest.  (Altman Decl. ¶ 3.)  Altman expressed an interest in purchasing Plaintiff's domain name – missworld.com.  (Altman Decl. ¶ 6.)  Plaintiff did not wish to sell his domain name, so they agreed to share use of the domain name.  (Altman Decl. ¶ 8.)  Specifically, Plaintiff implemented a divert from his domain name, missworld.com, to Altman's missworldusa.com site.  (Altman Decl. ¶ 9.)  In return, Mr. Altman told Plaintiff that Defendant would not contest Plaintiff's domain name or his 056 trademark, Miss World Wide Web.  (Goldfaden Decl. ¶ 32D.)  In addition, independent of the other terms of the agreement, Altman separately promised to propose to Mr. Morley, then president of Miss World, Ltd., that Plaintiff's proposed Miss World Wide Web contest participate "as a 'virtual . . . contestant' in the Miss World contest."  (Altman Decl. ¶ 9.)

In early 2000, Defendant and Altman terminated their exclusive licensing arrangement.  (Altman Decl. ¶ 14.)  Plaintiff claims, and Altman concurs, that Plaintiff continued to divert the domain name to a site designated by Altman.  (Altman Decl. ¶ 15.)

_____

[1]Anyone may challenge the validity of the mark within 120 days of publication in the Official Gazette.  If there is no challenge to the mark, then the mark will be registered in the Principal Register.

On January 19, 2001, Defendant sought resolution of its objection to Plaintiff's domain name registration before the World Intellectual Property Organization (WIPO) Arbitration and Mediation Center, pursuant to the ICANN Uniform Domain Name Resolution Policy Rules. (Goldfaden Decl. ¶ 41; Morley Aff. ¶ 16.)  In April 2001, the single panelist found that while the Plaintiff's motives in registering the domain name were questionable, his actions did not reflect the requisite bad faith necessary to merit a transfer of the ownership of the domain name.[2] (Morley Aff. ¶ 16.)  Defendant commenced a cancellation proceeding against Plaintiff's trademark, but these proceedings were suspended when Plaintiff filed a declaratory judgment action in this Court.  (Compl. ¶ 22; Def. Br. at 4.)

Plaintiff continues to be the registered owner of the missworld.com domain name and diverts users to a third party site entitled SAFE COMMERCE-SECURE SHOPPING FOR THE DIGITAL AGE.  (Goldfaden Decl. ¶ 45.)

## II.     **Requested Relief**

By this action, Plaintiff seeks a judicial declaration that: (1) his registered trademark, Miss World Wide Web, is valid as used in connection with entertainment services in the nature of beauty contests; and (2) his trademark and domain name do not infringe upon Defendant's mark, Miss World.  (Compl. ¶¶ 4-5.)  Defendant has counterclaimed for cancellation of Plaintiff's trademark and domain name, or alternatively, for the transfer of the trademark and domain name to Defendant.

By its motion, Defendant requests summary judgment and seeks the following relief: (1)

---

[2]This court is authorized to review the decisions made under the Uniform Domain Name Dispute Resolution Policy and its findings *de novo*.  See Dluhos v. Strasberg, 321 F.3d 365, 371 (3d Cir. 2003).

denial of the declaratory judgment sought by Plaintiff; (2) cancellation of Plaintiff's trademark; and (3) transfer of Plaintiff's domain name registration to Defendant.  Defendant argues that it is entitled to summary judgment because Plaintiff's trademark and domain name are invalid, as Plaintiff never used them in commerce.  Because there is no evidence that Plaintiff actually used the mark and domain name, this Court also should conclude, as a matter of law, that Plaintiff abandoned his rights to the mark and the domain name, and further conclude that Plaintiff's Statement of Use was fraudulent since it represented to the PTO, falsely in Defendant's view, that he had made the required "use" of his registrations.  Furthermore, because Plaintiff did not make "use" of the trademark or the domain name, he abandoned his rights to those registrations. Defendant contends that, between his misrepresentations to the PTO and the abandonment of his mark and domain name, cancellation of Plaintiff's trademark and transfer of Plaintiff's domain name registration are proper remedies.

Moreover, Defendant asserts that, even if the Court assumes that Plaintiff's trademark and domain name registration should be deemed valid, notwithstanding the evidence of non-use, fraud, and abandonment, it still is entitled to summary judgment.  Specifically, Defendant argues that Plaintiff's trademark infringes upon and dilutes, Defendant's trademark, and that his domain name registration violates the Anticybersquatting Consumer Protection Act ("ACPA").  See 15 U.S.C. §1125(d).

Plaintiff opposes Defendant's motion on the grounds that there is evidence of his commercial use of his trademark and domain name.  Furthermore, in light of this evidence of use, Defendant cannot assert that he (Plaintiff) ever abandoned his rights to the trademark or domain name or defrauded the PTO by stating that he actually was using the mark.  In addition, to the

5

extent Defendant seeks summary judgment on the grounds that Plaintiff abandoned his rights to the trademark and domain name or defrauded the PTO, Defendant should have pled these affirmative defenses, pursuant to Fed. R. Civ. P. 8, and accordingly, should be precluded from presenting such defenses.  Accordingly, Plaintiff argues that Defendant is not entitled to cancellation, the relief sought in its counterclaim.

Furthermore, Plaintiff asserts that Defendant is not entitled to summary judgment under a trademark dilution theory, because Defendant does not have a "famous" mark, but rather possesses a weak trademark in an already crowded field.  Defendant also should not prevail on an infringement theory, since there is little likelihood of confusion as to the origin or source of these marks in the field of pageants.  Furthermore, Plaintiff is not using his registered mark or domain name as a trademark, i.e., to identify the source of specific goods or services.[3]  In addition, Defendant cannot establish that Plaintiff violated the ACPA, because there is no evidence that Plaintiff registered the domain name in bad faith.

Finally, Plaintiff argues that Defendant should be precluded from objecting to his declaratory judgment action, or from asserting a counterclaim for cancellation, on the basis of acquiescence and laches.  For all of the above reasons, Plaintiff contends that Defendant's motion should be denied, and that Plaintiff is entitled to summary judgment on its complaint for declaratory relief.

_____

[3]Plaintiff appears to have drawn this argument from Data Concepts, Inc. v. Digital Consulting, Inc. 150 F.3d 620, 627-28 (6th Cir. 1998) (Merritt, J., concurring), in which Judge Merritt explained that, in certain instances, a registrant may not be using a domain name for "trademark" purposes, i.e., to identify the source of goods or services.  Plaintiff provides little to no analysis of how he has not used his domain name "for trademark purposes."

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)*.* A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  See Sound Ship Building Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  See Wahl v. Rexnord, Inc., 624 F.2d 1169, 1181 (3d Cir. 1980).

Where parties cross move for summary judgment, "the court must consider each motion

7

separately, and each side must still establish a lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." American Fabricare v. Township of Falls, 101 F. Supp. 2d 301, 302-03 (E.D. Pa. 2000) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## ANALYSIS

The central issue before this Court is whether there are genuine issues of material fact as to the validity of Plaintiff's trademark and domain name registration. For the following reasons, both motions are denied.

### PLAINTIFF'S ASSERTION OF LACHES AND ACQUIESCENCE

Although Defendant filed its motion prior to the filing of Plaintiff's cross-motion for summary judgment, this Court first shall address Plaintiff's assertion in support of its cross-motion and in opposition to Defendant's motion – namely, that Defendant should be denied all of its requested relief on the basis of laches and acquiescence. Based on a review of the record, this Court concludes that Defendant should not be barred from seeking relief on these grounds.

Laches and acquiescence are equitable defenses. See 15 U.S.C. § 1115(b)(9). A defendant asserting a laches defense must demonstrate that: (1) the other party inexcusably delayed the filing of suit, and (2) such delay resulted in prejudice to the defendant. An acquiescence defense requires the same showing, although it applies "'when the trademark owner, by affirmative word or deed, conveys its implied consent to another' to use its name or mark." See Analytic Recruiting, Inc. v. Analytic Resources, LLC, 156 F. Supp. 2d 499, 516 (E.D. Pa. 2001) (quoting Pappan Enterprises, Inc. v. Hardee's Food Systs., Inc., 143 F.3d 800, 804 (3d Cir. 1998). As the party asserting these defenses, Plaintiff bears the burden of showing that these defenses should apply to the instant action and bar Defendant's counterclaim and

8

request for declaratory relief.  This Court concludes that Plaintiff has not met this burden.

In this case, Plaintiff argues that both of these doctrines preclude Defendant's declaratory judgment action, as well as its request for cancellation of his trademark and domain name registration.  Defendant became aware of Plaintiff's trademark at least as early as March 14, 1997, when it filed a request for an extension to oppose Plaintiff's registration of Miss World Wide Web, but Defendant did not commence cancellation proceedings before the PTO until April 23, 2001.  (Ex. 18 to Morley Aff.)  In addition, Defendant became aware of Plaintiff's domain name registration on or about August 23, 1996, but did not challenge this registration formally until January 19, 2001 (Ex. 16 to Morley Aff.), when they filed a complaint against him, pursuant to the Uniform Domain Name Dispute Resolution Policy, with the World Intellectual Property Organization ("WIPO").  In sum, Defendant waited approximately four years from discovery of Plaintiff's trademark and domain name registrations before taking action.

While these delays may be inexcusable, Plaintiff has not persuaded this Court that he has suffered prejudice as a result of this delay.  Laches "becomes relevant where the senior user delays in asserting its rights for so long that the junior user has developed sufficient demand and goodwill through its own efforts that it would be inequitable to enforce the senior's rights." University of Pittsburgh v. Champion Prods., Inc., 686 F.2d 1040, 1047 (3d Cir. 1982).

Plaintiff has not offered persuasive evidence that he has developed sufficient demand and goodwill in his marks, or that he otherwise has suffered prejudice in some other respect as a result of Defendant's delays.  First, Mr. Morley, the former chief executive of Miss World, wrote to Plaintiff as early as August 23, 1996 and notified him of the possible conflict caused by his trademark and domain name, and Plaintiff acknowledged as much by letter to Mr. Morley about one week later.  (Ex. 9 to Morley Aff.)  Second, although Plaintiff argues that he has been

9

hamstrung with respect to developing his business, he provides little support, other than in his affidavit, to support this point.  Indeed, it appears that, for some time, Altman, Defendant's licensee, and Plaintiff, attempted to negotiate terms for the use of Plaintiff's domain name and explored the possibility of doing business together.  (Goldfaden Decl.; Altman Decl.)  The claimed prejudice arises from the failure of those negotiations.  Accordingly, in the absence of a showing of prejudice, this Court concludes that, as a matter of law, Plaintiff is not entitled to summary judgment on its declaratory judgment action based on laches.

Plaintiff also has failed to persuade this Court that the equitable defense of acquiescence should apply to bar Defendant from relief.  Acquiescence, like laches, also requires a showing of prejudice, which, as this Court already has concluded, Plaintiff has not demonstrated.  Thus, the acquiescence defense also cannot bar Defendant, as a matter of law, from seeking relief against Plaintiff.

Because both of these doctrines do not bar Defendant's ability to seek relief, to the extent that Plaintiff seeks summary judgment on his claims for declaratory relief based on these defenses, his motion is denied.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.   *Plaintiff's Trademark*

A.   Non-Use

Defendant moves for summary judgment on Plaintiff's declaratory judgment action and its counterclaim for cancellation or transfer of Plaintiff's trademark.  Defendant asserts that it is entitled to summary judgment in Plaintiff's action, because his mark was never used in

commerce, and therefore, is invalid.[4]

Defendant argues that, as a matter of law, Plaintiff is not entitled to a declaration that its trademark is valid, because a trademark registration is only authorized where the mark is used "in commerce," see 15 U.S.C. § 1051, and there is nothing in the factual record to demonstrate that Plaintiff ever actually made "use" of the trademark and domain name in the "ordinary course of trade." See 15 U.S.C. § 1127 (2003).

Plaintiff contends that he used its trademark in commerce, and thus, that Defendant is not entitled to summary judgment. Although counsel for Plaintiff conceded at oral argument that there was no evidence of annual beauty contests, there are other facts in the record that could lead a reasonable factfinder to conclude that Plaintiff used the trademark in commerce and that the trademark should not be declared invalid.[5] This Court agrees. Because there is a genuine issue of material fact as to whether Plaintiff "used" the trademark in commerce, Defendant's motion for summary judgment, to the extent it relies upon non-use of the trademark, is denied.

A mark has been "used in commerce . . . when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services engaged in commerce in connection with the services." Id. "The use must be bona fide,

---

[4]Defendant also argues that non-use is a basis for declaring Plaintiff's domain name registration invalid and for awarding it summary judgment. This Court disagrees, and examines non-use with respect to Plaintiff's domain name registration separately below. See infra Part IIA.

[5]At oral argument, when this Court asked Plaintiff's counsel whether there was "nothing in here that says this was an annual contest," counsel responded, "Your Honor, that's correct." (Transcript dated August 30, 2004 ("Tr."), at 14:15-17.) The issue of whether the contests were annual or not, however, is not dispositive on the question of whether the trademark was used in commerce, and in any event, argument by counsel is not a substitute for the factual record.

with token transactions accepted only where there is an accompanying intent to engage in continuing commercial use in the future." Blue Bell, Inc. v. Jaymar-Ruby, Inc., 497 F.2d 433, 437 (2d Cir. 1974) (also stating that the "specific definition of 'use' in § 1127 suggests to us that Congress clearly intended to require some bona fide commercial utilization of a mark prior to its registration"). A "minimal use" of a mark which is not part of "'an ongoing program to exploit the mark' is insufficient to vest a party with trademark rights." Anvil Brand, Inc. v. Consol. Foods Corp., 464 F. Supp. 474, 480-81 (S.D.N.Y. 1978) (internal citations omitted); see also Carter-Wallace, Inc. v. The Proctor & Gamble Co., 434 F. 2d 794, 804 (9th Cir. 1970) ("Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith.").

Adoption and a single use of a trademark may be sufficient for registration of a trademark but not sufficient to defeat charges of non-usage. See La Societe Anonyme des Parfums Le Galon v. Jean Patou, Inc., 495 F.2d 1265, 1271 (2d Cir. 1974) (citing United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97 (1918)) ("The law of trademarks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not is [sic] mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business."); see also id. at 1272-73 ("To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory."). Limited trademark usage may be enough so long as such use is "part of an ongoing program to exploit the mark commercially." Id. at 1272.

In the instant case, Defendant urges this Court to conclude, as a matter of law, that

Plaintiff never made a bona fide use of his trademark because he never held a Miss World Wide Web beauty contest.  (Def. Br. at 4; Morley Aff. ¶ 15.)  In addition, Defendant points to the fact that Plaintiff was engaged full time in another occupation, which suggests that he never had a bona fide intention to use the trademark in commerce for the purpose reflected on his registration – namely, the operation of an online contest.  (Def. Reply at 3) (citing Goldfaden Decl. ¶ 1.)

According to Plaintiff, however, between August 1996 and July 1998, "I worked to develop the concept of my online beauty contest.  The site was announced to the public and numerous photographic submissions were obtained from the public.  These submissions were displayed and although no formal voting took place and no contestant was awarded a title, informal e-mail votes were noted, tallied and results posted."  (Goldfaden Decl. ¶ 23.)  According to Plaintiff's submissions, he filed a Statement of Use with the PTO in connection with these activities.  (Goldfaden Decl. ¶ 25.)  These announcements reflect that an online contest was scheduled for July 15, 1998, with the acceptance of submissions beginning in June 1998, and include a reference to Plaintiff's name and direct viewers to "bookmark" missworld.com.  (Ex. B to the Declaration of Mark J. Ingber dated September 1, 2003 ("Ingber Decl.")).[6]

It further appears that, between 2000 and 2002, Plaintiff received submissions for a contest.  (Ex. L to the Declaration of Mark J. Ingber dated December 8, 2003 ("Ingber Supp. Decl.")).  The "subject" fields of these e-mails reflect different topics, ranging from "pageant application" to "consideration" to "Miss Cindy Cinnamon."  (Ex. L to Ingber Supp. Decl.)  A reasonable fact finder could construe some of these e-mails as submissions for an ongoing pageant or contest.  (Ex. L to Ingber Supp. Decl.)  One e-mail, for example, dated June 5, 2001,

_____

[6]This particular announcement appears to have been submitted as part of the SOU that Plaintiff filed with the PTO.

states, "I am Shayla Stevens and I would love to be part of the contest!" and attaches photographs and personal information to the e-mail message. Another e-mail, bearing the subject heading, "Love to be on your site," states "You've got a great site and I'd love to be on it! I'm 40, 5' 5", 130, 38DD-26-36, platinum hair, brown eyes, model, actress, dancer, escort, and also run the VIP area of a restaurant." Other e-mails inquire into whether pictures sent to Plaintiff had been received. (Ex. L to Ingber Supp. Decl.)

Taken together, a reasonable fact finder could conclude that more than a "token use" of the mark had been made. Although the e-mails do not identify "Miss World Wide Web" or missworld.com specifically, they are addressed to Goldfaden, whose name and website address (missworld.com) are mentioned on at least one contest announcement. A reasonable fact finder could conclude that these submissions were received in response to Plaintiff's announcements or in connection with Plaintiff's use of his trademark on the internet at his registered domain. Because there are genuine issues of material fact as to Defendant's contention that Plaintiff's trademark should be invalidated based on non-use, Defendant's motion, insofar as it seeks summary judgment on the basis of non-use, is denied.

### B.    Abandonment and Fraud; Counterclaims for Cancellation or Transfer

Defendant argues that, even if this Court does not adopt non-use as a basis for granting its motion for summary judgment, it is entitled to summary judgment because the evidence of non-use supports a finding that Plaintiff abandoned his rights to the mark and the domain name, and that Plaintiff fraudulently obtained his mark and registration by representing that he had used the mark and domain name in commerce, when, in fact, he had not. Because either of these grounds is sufficient as a matter of law to invalidate Plaintiff's asserted rights to the trademark and domain name registration, Defendant asserts that it is entitled to summary judgment, and seeks

14

relief in the form of cancellation and/or transfer of the trademark and registration.

Plaintiff contends that, as a preliminary matter, abandonment and fraud are affirmative defenses that Defendant neglected to plead in its answer, pursuant to Rule 8(c) of the Federal Rules of Civil Procedure ("the Rules"). In addition, Plaintiff claims that, because the undisputed evidence actually demonstrates "use" for purposes of establishing trademark validity, Defendant's assertions of abandonment and fraud must fail.

This Court shall address the first of Plaintiff's objections to Defendant's defenses of fraud and abandonment, namely, that Defendant waived these defenses by failing to assert them in responsive pleadings. "The question of when [a] defendant may raise certain defenses by summary judgment has caused some confusion." See 10B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2734 (2004). Although it is "fairly well settled" that certain affirmative defenses may be raised by a Rule 56 motion prior to the answer, early authority has suggested that affirmative defenses omitted from an answer should be deemed waived pursuant to Rule 8(c). Recent cases in this Circuit, however, have concluded that the failure to plead affirmative defenses does not automatically result in waiver. See Eddy v. Virgin Islands Water and Power Authority, 256 F.3d 204, 209 (3d Cir. 2001) (failure to plead affirmative defense of qualified immunity in answer did not preclude defendant from raising defense on motion for summary judgment). Although a motion for summary judgment "is not the most appropriate way to raise a previously unpled defense," the Third Circuit Court of Appeals has concluded that, in the absence of prejudice to the plaintiff, waiver is not automatic. See Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1373-74 (3d Cir. 1993).

This Circuit has found support for this rule in Rule 15(a) of the Rules, which advises courts to grant leave to parties who seek to amend their responsive pleadings freely so that they

may plead affirmative defenses.  See id.; see also WRIGHT ET AL., supra (noting that the "better view is that the court may grant defendant permission to raise an affirmative defense by summary-judgment motion, perhaps following an amendment of the answer, at any time in the proceedings even though the defense was not pleaded in the original answer" to avoid an "unnecessarily technical construction of the rules").

Notwithstanding this general view, district courts in this circuit have the discretion to decide whether there was a "reasonable modicum of diligence in raising the defense."  Eddy, 256 F.3d at 210.  In particular, courts must "inquire whether the defendants violated any scheduling orders in raising the defense for the first time in their summary judgment motions, whether they delayed asserting the defense for tactical purposes or any other improper reason, and, most important, whether the delay prejudiced the plaintiff's case."  Id.

Furthermore, the above authorities, which advise against the technical application of the waiver rule, would apply with less force here, where an answer already has been filed, the plaintiff objects to these defenses being raised at this stage of the litigation, and where the particular affirmative defenses sought to be raised involve questions of disputed fact or credibility.  For example, in Kleinknecht, the court concluded that it would be inappropriate to decide the immunity defense on the basis of waiver upon appeal from summary judgment, despite the defendant's failure to plead the defense, because the defense was a question of law on which the relevant facts were undisputed.  See 989 F.2d at 1374.  In addition, in that case, the plaintiffs did not argue prejudice when the defendant raised the defense for the first time by motion rather than by responsive pleading.  See id.

Here, the abandonment and fraud defenses cannot be resolved as a matter of law upon a record of undisputed facts.  Abandonment and fraud necessarily involve an inquiry into the intent

of the plaintiff, which the parties dispute.  Abandonment of a mark, for example, is established "when its use has been discontinued <u>with an intent not to resume such use</u>."  15 U.S.C. § 1127 (emphasis added).  A defendant must demonstrate (1) actual evidence of non-use of the registered mark, as well as (2) an <u>actual intent</u> on the part of the owner to abandon the mark.  <u>See Marshak v. Treadwell</u>, 240 F.3d 184, 198 (3d Cir. 2000) (emphasis added).  Fraud likewise involves an inquiry into the intent of the plaintiff.  Fraud in "procuring a service mark occurs when an applicant <u>knowingly</u> makes false, material representations of fact in connection with an application."  <u>See Metro Traffic Control, Inc. v. Shadow Network, Inc.</u>, 104 F.3d 336, 340 (Fed Cir. 1997) (emphasis added).[7]

Unlike <u>Kleinknecht</u>, or other cases permitting parties to raise affirmative defenses by way of summary judgment motion, the instant case presents different circumstances.  In this case, the attempt by Defendant to raise affirmative defenses, subsequent to the filing of an answer, involve questions of fact and credibility that are improper for resolution by summary judgment.  Based on the plaintiff's objection to Defendant's late-raised affirmative defenses, this Court concludes that Defendant cannot avail itself of these defenses upon motion for summary judgment.

Further, based on this Court's determination that there are genuine issues of material fact as to whether Plaintiff made "use" of his trademark, this Court, in any event, could not determine that Defendant established the affirmative defenses of fraud and abandonment as a matter of law.

---

[7]The Federal Circuit has placed emphasis on the fact that the misleading or inaccurate statement must have been done knowingly.  <u>See Metro Traffic</u>, 104 F.3d at 340.  This is to ensure that "honest misunderstanding, inadvertence, negligent omission or the like" are not found to be fraud, while those statements evincing an intent to deceive are punishable.  <u>Id.</u>  The burden is upon the party seeking cancellation and they "must prove the alleged fraud by clear and convincing evidence."  <u>See L.D. Kichler Co. v. Davoil, Inc.</u>, 192 F.3d 1349, 1351 (Fed. Cir. 1999) (quoting <u>Metro Traffic</u>, 104 F.3d at 340).

The disputed issue of "use in commerce" is material to whether Plaintiff made a false representation (for purposes of establishing fraud), and indeed an element of the defense of abandonment.  Accordingly, Defendant's requests for cancellation and transfer of the trademark and domain name registration, which were based on these defenses, also must be denied.[8]

### C.   Infringement

Defendant asserts that its motion should be granted because, even if this Court were to assume the validity of Plaintiff's trademark, he could not prevail at trial because his trademark infringes upon Defendant's mark.  Because there exist genuine issues of material fact as to whether Plaintiff's trademark creates the likelihood of confusion necessary to establish infringement, Defendant's motion is denied.

The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion.  See 15 U.S.C. § 1114 (2004); Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462 (3d Cir. 1983).  A party asserting a claim of trademark infringement must demonstrate that: (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the another party's use of its mark creates a likelihood of confusion.  See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000); Opticians Ass'n of America v. Indep. Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990).  In its motion, Defendant asserts that it can satisfy the first two elements of a claim for infringement easily, and that there are no genuine issues for trial as to the third and final element, whether

---

[8]Cancellation ordinarily may be a remedy where the registration of such mark has been abandoned or obtained by fraud.  See 15 U.S.C. § 1064 (2004) (stating that a party may file for cancellation if he "believes that he is or will be damaged, including as a result of dilution . . . by the registration of a mark . . . at any time if the registered mark . . . has been abandoned, or its registration was obtained fraudulently").

Plaintiff's registrations create a likelihood of confusion.  According to Defendant, "the likelihood of confusion is evident from the names themselves and the service covered."  (Def. Br. at 6.) Plaintiff's mark is a "natural extension of our name" (Morley Aff. ¶ 8), and a subsequent user like Plaintiff cannot "merely add[] generic or descriptive material" (Def. Br. at 8) to "avoid likely confusion by appropriating another's entire mark and adding descriptive or non-descriptive matter to it."  (Def. Br. at 9) (quoting Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 477 (3d Cir. 1994)).

Plaintiff argues that Defendant is not entitled to summary judgment on the basis that Plaintiff's mark and domain name are infringing.  Plaintiff points out that Defendant conducted, and never submitted, any surveys tending to show a likelihood of confusion, and that Defendant is relying almost exclusively on the speculation of its principal, Julia Morley.  (Pl. Br. at 34-35.) Plaintiff further contends that Defendant essentially admitted that it cannot identify any harm, whether in the form of actual confusion or lost revenue, suffered as a result of Plaintiff's registrations.  (Pl. Br. at 36) (citing Defendant's Responses to Plaintiff's Request for Admissions).

While Defendant correctly argues that a likelihood of confusion – not possible or actual confusion – must be shown to establish trademark infringement, Defendant's motion still must be denied, because there exist genuine issues of material fact as to the likelihood of confusion.

The element of likelihood of confusion may be established by addressing any number of different factors, including: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5)

19

the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertising through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function or other factors; and (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market. See Interpace Corp., 721 F.2d at 462-463 (setting forth what are commonly referred to as the "Lapp factors" and affirming the district court's conclusion that "Lapp" and "Lapp Cable" are "for all practical purposes identical"); A&H Sportswear, 237 F.3d at 211.

An examination of the above factors leads this Court to conclude that there are genuine issues of material fact for a fact finder to resolve. For example, the first consideration – the degree of similarity between the marks – presents a genuine issue in the instant case that is proper for determination by a fact finder. See Country Floors, Inc. v. Partnership of Gepner and Ford, 930 F.2d 1056, 1063 (3d Cir. 1991).[9] Trademarks are "confusingly similar if the ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship." See A&H Sportswear, 237 F.3d at 216 (quoting Banff, Ltd. v. Federated Dep't Stores, Inc., 841 F.2d 486, 492 (2d Cir. 1988)). In comparing the trademarks,

---

[9]In Country Floors, the court of appeals concluded that the similarity of logos between "Country Tiles" and "Country Floors" raised a genuine factual dispute because "the two logos use the same type font and are both set on a ceramic tile . . . [and] utilizes only the center of the tile to display the name adding somewhat similar designs to form a border around the center of the tile." Id. Because the "visual comparison" indicated a likelihood of confusion, the district court had been presented with a factual issue. Id. at 1064.

consideration should be given to the sight, sound, and meaning of the marks.  Id. at 211.[10]
Furthermore, when "comparing two marks each must be viewed in its entirety," Country Floors,
Inc., 930 F.2d at 1065, although if "one feature of a mark may be more significant than other
features, [] it is proper to give greater force and effect to that dominant feature." Id.  As a general
matter, however, "the overall impression of the marks, not their individual component parts,
must be taken into account."  See Jews for Jesus v. Brodsky, 993 F. Supp. 282, 302 (D.N.J.
1998) (quoting Genovese Drug Stores, Inc. v. TGC Stores, Inc., 939 F. Supp. 340, 346 (D.N.J.
1996)).

In the instant case, a reasonable fact finder might conclude that ordinary consumers
would be confused as to whether the two products share a common source or affiliation.  "Miss
World" is, as Defendant asserts, not clearly distinct from Plaintiff's registered trademark, "Miss
World Wide Web."  Alternatively, a reasonable jury could conclude that, while the trademarks
share the common prefix "Miss," Plaintiff's mark is not confusingly similar because, viewed in
its entirety, it should be read as "Miss" plus "World Wide Web" – not, as Defendant suggests,
"Miss World" plus "wide" and "web."

The parties further dispute the strength of Defendant's mark, another consideration that is
relevant to determining the likelihood of confusion.  For example, Plaintiff asserts that
Defendant's trademark, while incontestable and decades old, should not be considered a "strong"
mark because it is one of many names that, utilizing the "Miss" prefix, have developed to
describe beauty pageants.  (Pl. Br. at 49) (citing Miss World v. Mrs. America Pageants, Inc., 856
F. 2d 1445, 1449 (9th Cir. 1999), in which the court of appeals stated that "[as] little imagination

---

[10]Unlike the instant case, Country Floors also involved evidence of actual confusion.

is required to understand that it signifies a beauty pageant[, t]hese are indications of a not strong

mark"). Defendant contends that, given the history of Miss World in the field of beauty

pageants, and its particular position in that field, no reasonable fact finder could conclude that it

possessed a weak mark, and in any event, Defendant's use of Miss World long predates

Plaintiff's registration of his mark.

The <u>Lapp</u> factors are a non-exclusive list of relevant factors that should be considered

prior to a determination of the likelihood of confusion. Even without addressing the other

enumerated factors, however, it is apparent to this Court that there are genuine issues of material

fact for a fact finder to resolve, and that Defendant's motion, to the extent that it seeks summary

judgment on the basis of trademark infringement, should be denied.

### D.   Dilution

Defendant also asserts that, even if this Court were to assume that Plaintiff's trademark

and domain name registrations are valid, Plaintiff cannot prevail because his registrations

impermissibly dilute Defendant's trademark. Because there are genuine issues of material fact,

Defendant's motion cannot be granted on the basis of trademark dilution.

The Federal Trademark Dilution Act prohibits the unauthorized use of "famous" or

"distinctive" trademarks, where such use occurred after the mark became "famous" or

"distinctive" and diminishes or dilutes the distinctiveness of the mark. <u>See</u> 15 U.S.C. § 1125(c)

(2004); <u>see also</u> 4 McCarthy, Trademarks and Unfair Competition § 24:70 (4th ed. 1997).

Dilution is the "lessening of the capacity of a famous mark to identify and distinguish goods or

services, regardless of the presence or absence of competition between the owner of the famous

mark and other parties or likelihood of confusion, mistake or deception." 15 U.S.C. §1127.

To establish a prima facie claim for trademark dilution, a party must show that: (1) the

plaintiff owns a mark that is "famous"[11]; (2) the defendant is making commercial use of a mark or trade name; (3) the defendant began such use after plaintiff's mark became famous; and (4) the defendant's use of its mark dilutes the capacity of plaintiff's mark to identify and distinguish its goods or services.  See Times Mirror Magazine, Inc. v. Las Vegas Sport News, LLC, 212 F.3d 157, 163 (3d Cir. 2000), cert. denied, 531 U.S. 1071 (2001).

The burden lies upon the holder of the famous mark to show that the junior mark holder's use of the mark causes actual harm or injury to the value of the famous mark.  See Victoria's Secret Catalogue, Inc. v. Victor Mosley, 537 U.S. 418, 427 (2003).  This burden may be satisfied by circumstantial evidence of actual harm.  Id.

In the instant case, Defendant has not set forth evidence of harm, or pointed to circumstantial evidence tending to establish harm.  (Ex. F to Ingber Decl.)  Exhibit F is Defendant's responses to Plaintiff's first request for admissions.  In paragraphs 22 through 26 of this response, Defendant admits that it is "not aware of any instances of actual confusion"; "that Defendant has not suffered any loss of revenue as a result of Plaintiff's activities"; "that Defendant cannot identify any objective harm which has been caused to the Defendant by Plaintiff's registration"; and "that Defendant is not aware of any instance in which it received any mail, telephone calls, orders, inquiries or complaint which were intended for Plaintiff."

---

[11]To determine whether a mark is famous, courts may consider, among other factors: (1) the degree of inherent or acquired distinctiveness of the mark; (2) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (3) the duration and extent of advertising and publicity of the mark; (4) the geographical extent of the trading area in which the mark is used; (5) the channels of trade for the goods or services with which the mark is used; (6) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (7) the nature and extent of use of the same or similar marks by third parties; and (8) whether the mark was registered under the Act of March 3, 1881 or the Act of February 20, 1905, or on the principal register.  See 15 U.S.C. § 1125(c).

Furthermore, to the extent that Defendant must show that Plaintiff has been making commercial use of its registered trademark in order establish a claim of trademark dilution, this Court already has concluded that there are genuine issues of material fact as to whether Plaintiff has used his trademark in commerce.  The existence of genuine issues of fact as to this element of a trademark dilution claim is another basis for denying Defendant's motion.

Accordingly, Defendant has not shown that it could establish trademark dilution, or that there are no genuine issues of material fact as to whether Plaintiff's registrations dilute Defendant's trademark.  Thus, Defendant's motion for summary judgment, on the basis that Plaintiff's registrations impermissibly dilute Defendant's trademark, is denied.

## II.    *Plaintiff's Domain Name Registration*

Defendant argues that it is entitled to summary judgment because Plaintiff's domain name is invalid due to evidence of non-use.  Defendant further asserts that the evidence of non-use supports a finding of abandonment and, in connection with the Statement of Use that Plaintiff filed with the PTO, fraud.  Moreover, even if this Court concluded that his domain name registration is valid, i.e., not invalidated based on non-use, summary judgment still should be granted to Defendant because it infringes upon, and dilutes, Defendant's trademark. According to Defendant, even if this Court were to overlook (what it construes as) the undisputed evidence of non-use, the domain name should be deemed invalid because it violates the ACPA. This Court disagrees.

### A.    <u>Non Use</u>

In the context of domain names, use in the operation of a website can satisfy the "use in commerce" requirement, "because it affects a party's ability to offer services." <u>Argos v. Orthotec LLC</u>, 304 F. Supp. 2d 591, 595 (D. Del. 2004) (endorsing <u>Planned Parenthood Fed'n of America,</u>

24

Inc. v. Bucci, No. 97-0629, 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997)).  "[T]he nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement."  See Planned Parenthood, 1997 WL 133313, at *3.

This Court concludes that there are genuine issues of material fact as to whether Plaintiff's domain name, missworld.com, ever was used in connection with Miss World Wide Web beauty contests.  There is at least some evidence from which a reasonable fact finder could conclude that Plaintiff used his domain name registration "in commerce."  For example, the domain name is the listed internet site in Plaintiff's announcement of the July 1998 beauty contest.  (Ex. B to Ingber Decl.)  On the other hand, there is evidence that Plaintiff was conducting activities at other domains.  Certain e-mail messages, which Defendant submitted to this Court, suggest that Plaintiff also may have been operating a contest on missnudeinternet.com (Ex. 23 to Certification of Matthew P. O'Malley dated November 12, 2003 ("O'Malley Cert.")), while other messages suggest that Plaintiff was developing a Miss Web internet site.  (Exs. O and P to Ingber Supp. Decl.)  It is unclear whether Plaintiff conducted these activities in addition to, rather than in lieu of, the missworld.com internet site.  As a reasonable fact finder could draw different inferences from the evidence in the record, this Court must deny Defendant's motion, to the extent that it seeks summary judgment on the theory that Plaintiff's domain name registration is invalid based on non-use.

**B.  ACPA**

Defendant claims that, even if this Court were to conclude that the domain name registration cannot be invalidated on the basis of non-use, there still are no genuine issues of material fact as to whether Plaintiff's domain name registration violates the Anticybersquatting

Consumer Protection Act ("ACPA").  See 15 U.S.C. §1125(d).  Thus, Defendant contends, the proper remedy is for this Court to transfer Plaintiff's domain name to Defendant.

Plaintiff contends that Defendant is not entitled to protection under the trademark laws because its trademark is a weak one in a crowded field, and also because the domain name is not being used as a trademark to identify "the source of specific goods and services."  (Pl. Br. at 58-59) (citing Data Concepts, Inc. v. Digital Consulting, Inc., 150 F.3d 620, 627-28 (6th Cir. 1998) (Merritt, J., concurring)).  Although this Court does not find Plaintiff's opposition particularly persuasive, this does not warrant the grant of summary judgment to Defendant.  To establish an ACPA violation, a party must show that there was a bad faith intent, on the part of the registrant, to profit from the violation.  As Plaintiff's intent is a question of fact on which there is a genuine dispute, and one which is material to Defendant's ACPA claim, this Court concludes that Defendant's motion should be denied.

The ACPA regulates the registration of domain names, which identify and locate computers and resources connected to the Internet.  No two organizations can have the same domain name.  "A domain name tells users where they can find a particular web page, much like a street address tells people where they can find a particular home or business."  See Virtual Works, Inc. v. Volkswagen of America, Inc., 238 F.3d 264, 266 (4th Cir. 2001).

To establish a violation of the ACPA: (1) the trademark must be "distinctive" or "famous"; (2) the allegedly infringing domain name must be "identical or confusingly similar"; and (3) in registering, trafficking in, or using the allegedly infringing domain name, the defendant must have had a bad-faith intent to profit from plaintiff's distinctive or famous trademarks.  See 15 U.S.C. § 1125(d); Shields v. Zuccarini, 254 F.3d 476, 481-82 (3d Cir. 2001); Advance Magazine Publishers, Inc. v. Vogue Int'l., 123 F. Supp. 2d 790, 798 (D.N.J. 2000).  Under the

ACPA, courts are permitted to cancel domain name registrations, and to transfer such

registrations to the owners of famous or distinctive marks.[12]  See 15 U.S.C. § 1125(d)(i)(C).

Defendant argues that Plaintiff's domain name registration ("missworld.com") violates

the ACPA, because the domain name is identical to Defendant's trademark ("Miss World"), and

Plaintiff cannot claim any intellectual property rights in the domain name.  In addition,

Defendant further claims that there is no genuine dispute as to whether it can demonstrate that

Plaintiff possessed the requisite bad faith intent to infringe upon its trademark by registering his

domain name.  (Def. Br. at 13.)  Defendant argues that good faith defenses have been raised and

"disposed of summarily" where there are only "bald assertions of lack of intent."  (Def. Br. at 13)

(quoting Paccar Inc. v. Telescan Techs., LLC, 319 F.3d 243, 250, 254 (6th Cir. 2002)).

Defendant claims that the factual record in this case only contains Plaintiff's "bald assertions" of

good faith.  In addition, the fact that the domain name is identical to Defendant's trademark, and

that Plaintiff consistently failed to use the domain name, establishes that he registered the name

in bad faith.  (Def. Br. at 15-16).  Therefore, Defendant seeks a transfer of Plaintiff's domain

name registration to Defendant, pursuant to the ACPA.  (Def. Reply at 9-10.)

Plaintiff contends that Defendant is not entitled to summary judgment because Plaintiff

did not have the bad faith intent to profit from his domain name registration, notwithstanding the

fact that missworld.com is identical to Defendant's trademark registration.[13]

---

[12]Distinctiveness refers to the inherent qualities of a mark.  It is a different concept from whether a mark is famous.  There are four categories of distinctiveness: generic, descriptive, suggestive or fanciful/arbitrary.  The degree of protection varies depending on the category of mark.  See Abercrombie & Fitch v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976).

[13]  Plaintiff continues to press his claim that Defendant's trademark also should not be deemed "famous" for purposes of the ACPA.

For purposes of establishing a claim under the ACPA, Defendant must show that Plaintiff acted with the requisite "bad faith intent" to profit from its trademark registration.  The ACPA sets forth a non-exhaustive list of considerations that are relevant to a finding of bad faith.  These considerations include, among others:

> the trademark or other intellectual property rights of the person, if any, in the domain name; the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct . . . .

15 U.S.C. § 1125(d)(1)(B)(i).  There also is a safe harbor provision in the ACPA, which provides that "bad faith intent . . . shall not be found in any case in which the court determines that the [registrant] believed or had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).

In the instant case, there is a genuine issue of material fact as to whether Plaintiff acted with the requisite bad faith in registering the domain name, missworld.com.  At first blush, it would appear that the fact that the domain name registration is identical to Defendant's registered trademark only could lead a reasonable jury to conclude that Plaintiff acted in bad faith.  See, e.g., People for the Ethical Treatment of Animals v. Doughney, 113 F. Supp. 2d 915, 920 (4th Cir. 2001) (finding bad faith where the defendant registered peta.org on behalf of his organization, "People Eating Tasty Animals" when "peta" was identical to the plaintiff's registered trademark).

Whether the trademark and the domain name registration are identical, however, is not dispositive.  In particular, bad faith also may be determined by whether or not the registrant used the domain name in connection with the bona fide use of services – an issue of fact that the

28

parties hotly dispute.  (Def. Br. at 1-4; Morley Aff. ¶ 15; Pl. Br. at 18; Pl. SOF ¶ 6.)

Determinations of bad faith also may depend in part on evidence, if any, of the person's offer to transfer or sell the domain name to the trademark owner without having used, or having an intent to use, the domain name in the bona fide offering of services.  Here, the evidence in the record suggests that Defendant first approached Plaintiff in order to purchase the domain name registration (Pl. SOF ¶ 9) and that Defendant believed that Plaintiff was unaware of Defendant's trademark rights.  (Ex. 9 to Morley Aff.) ("We understand that you were unaware of our registration.").  Indeed, it appears that, at one point nearly two years after Plaintiff had registered missworld.com, one of Defendant's licensees, Mr. Altman, and Plaintiff were negotiating the use of Plaintiff's domain name registration, and agreed that missworld.com would direct viewers automatically to a website selected and controlled by Altman.  (Goldfaden Decl. ¶ 14; Altman Decl. ¶ 8.)  According to Altman, Plaintiff had been unwilling to sell or transfer the name but instead expressed an interest in "[Altman's] suggestion to work together with Miss World Ltd. to promote both his own and Miss World Ltd.'s contest[.][sic]"  (Altman ¶ 7.)  Based on Plaintiff's interactions with Altman, a reasonable fact finder could disagree as to what inferences to draw about Plaintiff's intent with respect to his domain name registration.  Upon the foregoing considerations, this Court cannot conclude that there are no genuine issues of material fact for a fact finder to resolve with respect to whether Plaintiff acted with the bad faith required to establish an ACPA violation.

This Court concludes that Defendant's motion for summary judgment as to the domain name registration should be denied.  Although courts have determined the issue of a whether a defendant acted in bad faith in violation of the ACPA upon motion for summary judgment, ultimately bad faith is a question of fact, and in the instant case, one on which both parties have

failed to demonstrate that a reasonable jury could reach only one resolution.  Mr. Morley's

August 23, 1996 letter ostensibly apprises Plaintiff for the first time that his domain name

registration potentially infringes upon Defendant's registered trademark.  Subsequent

negotiations and exchanges between Plaintiff and Mr. Morley (Ex. 9 to Morley Aff.), and later,

Mr. Altman (Altman Decl.; Goldfaden Decl.), address, but do not dispose of, the question of

Plaintiff's intent in registering missworld.com.  Accordingly, Defendant's motion for summary

judgment is denied.

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff also cross-moves for summary judgment on his declaratory judgment action.  In

particular, he seeks a declaration that his trademark and domain name registrations are valid and

non-infringing.  Although this Court's analysis of Defendant's motion addresses the genuine and

material factual issues to be resolved in this action, this Court briefly will set forth its grounds for

denying Plaintiff's motion.

Plaintiff seeks declaratory relief with respect to his trademark registration as well as his

domain name registration.  With respect to his trademark, Miss World Wide Web, this Court

already has determined that there are genuine issues of material fact as to whether he made

sufficient "use" of the trademark in commerce so as to warrant protection of this registration

under the trademark laws.  In addition, even if this Court could not invalidate the trademark

based on non-use, this Court still could not resolve the issue of whether Plaintiff's trademark

infringes upon Defendant's trademark.  Specifically, as discussed at length supra, a reasonable

fact finder could determine the question of whether Plaintiff's trademark creates a likelihood of

confusion affirmatively or negatively.  While there is some similarity between the marks,

reasonable minds could differ as to whether ordinary consumers would be confused as to the

30

source or origin of these marks.

With respect to Plaintiff's domain name registration, this Court already has determined that the question of whether Plaintiff possessed the requisite bad faith when he registered missworld.com is a disputed issue of fact. The record does not reflect merely a lack of bad intent, as Defendant suggests. Rather, reasonable minds could draw different inferences from the record, which includes not only the fact that the domain name is identical to Defendant's registered trademark, but also correspondence reflecting a budding, and then deteriorating, business relationship. In light of these genuine issues of material fact, it would be improper for this Court to resolve these cross-motions for summary judgment in favor of either party.

## CONCLUSION

For the reasons set forth above, the parties' cross-motions for summary judgment are denied.

DATED:   July 18, 2005

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.